USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM M.,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**25-CV-4210 (KHP)**

**OPINION AND ORDER ON MOTION TO REMAND**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiff Kim M. ("Plaintiff"), represented by counsel, commenced this action against Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant to Section 205(g) and/or Section 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff seeks review of the Commissioner's decision that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act and, therefore, not entitled to disability insurance benefits ("DIB") from October 24, 2022, the onset date of her alleged disability.

## BACKGROUND

### I. Procedural History

Plaintiff, who has completed two years of college, worked as a teacher's aide for special needs children from February 2017 to October 24, 2022.[1] (ECF No. 9 ("Admin. Record") at 79). She is fluent in English. *Id.* at 181. She was 52 years old when she stopped working.[2] *Id.* at 73.

[1] Plaintiff also worked at a grocery store as a counter person for six months in 2015 and worked as a waitress in the summer of 2008. (Admin. Record at 181).

[2] In August 2022, just prior to stopping work, she told her neurologist that she did not think she could continue working full time with emotionally challenged children and is thinking of either getting a modified job with more sitting instead of being with children or filing for disability. *Id*. at 343.

On November 9, 2022, she filed an initial claim for disability citing the following conditions: rheumatoid arthritis, long Covid, myasthenia gravis, asthma, depression/anxiety, and sleep apnea. *Id.* In her application, Plaintiff complained principally about stiffness and pain, stating it was hard to keep up with the children at her job. *Id.* at 188–93. She explained she has a hard time sitting or standing for too long, finds it painful to kneel, and that her pain makes it hard to concentrate or write for long. *Id.* She also explained that she is stiff when she wakes up and that tasks such as getting dressed, brushing teeth, doing light housework, and making dinner take a long time and tire her out. *Id*. Plaintiff also indicated that long Covid has severely impacted her mobility, stamina, and concentration. *Id.* She expressed that she does what she can, but everything is harder, and she can do less than she used to because of her physical impairments. *Id.* She reported being able to follow written and spoken instructions and getting along "fine" with authority figures. *Id.*

The initial claim was denied on May 1, 2023, and again on October 3, 2023, following Plaintiff's request for reconsideration. *Id.* at 19. On November 22, 2023, Plaintiff filed a request for a hearing, which was held telephonically before Administrative Law Judge ("ALJ") Michael J. Stacchini on May 16, 2024. *Id.* Both Plaintiff and an impartial vocational expert (the "VE"), Joseph Atkinson, testified. *Id.* at 44. On June 7, 2024, ALJ Stacchini found that Plaintiff was not disabled under the Social Security Act. *Id.* at 34. On July 1, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. *Id.* at 5. However, on March 17, 2025, the Appeals Council denied the request. *Id.* On May 19, 2025, Plaintiff initiated this action, and, on August 21, 2025, Plaintiff filed a motion to remand the case for further administrative proceedings on

the grounds that the ALJ's decision was not supported by substantial evidence and incorrect as a matter of law. (ECF Nos. 1; 13).

## II. Medical History

Plaintiff's alleged disability stems from a series of chronic conditions, including physical and mental impairments. These chronic conditions include: rheumatoid arthritis, long Covid,[3] myasthenia gravis, asthma, depression/anxiety, and sleep apnea. Plaintiff further asserts that these conditions have prevented her from working since October 2022. (Admin. Record at 59). Plaintiff's relevant medical history is detailed below.

### A. Plaintiff's Treating Providers

#### a. *Dr. Uma Alampur*

Plaintiff suffers from myasthenia gravis and received treatment from Dr. Uma Alampur at Upstate Neurology PC during the relevant period. Generally, over the course of the various visits, spanning from approximately November 2020 to January 2023, Dr. Alampur noted that Plaintiff appeared to be well nourished, alert, and oriented and that her myasthenia gravis appeared stable and responded to medication. *Id.* at 255–56, 346, 350–52, 354. On November 20, 2020, Plaintiff saw Dr. Alampur, stating concerns that she had woken up with a jerking of both arms and legs. *Id.* at 255–56. Plaintiff turned down taking an electroencephalogram (EEG) test, and Dr. Alampur provided counseling on her BMI and nutrition and noted that Plaintiff's myasthenia gravis was stable. *Id.* On March 9, 2021, Plaintiff again visited Dr. Alampur complaining of continued fatigue post-Covid and worsening cognition, after which an MRI brain

---

[3] According to Plaintiff's medical records, prior to her dated disability, she had multiple bouts of Covid between 2020 and 2021, one in December 2020 and one in February 2021. (Admin. Record at 258). Plaintiff tested positive for COVID-19 in May 2022 as well. *Id.* at 292–303.

scan was discussed, as well as hydration, rest, and exercise. *Id.* at 354–55. On May 12, 2021, Plaintiff had an MRI of her brain, which showed no masses, hemorrhages, or other issues of clinical significance. *Id*. at 352. According to Plaintiff's testimony before the ALJ, she was still working as a teacher's aide in May 2021. *Id.* at 59.

Plaintiff's fatigue continued into 2022. On June 1, 2022, Plaintiff visited Dr. Alampur citing concerns related to a physical incident at work when she was hit by a student. She asked Dr. Alampur whether she should continue working; Dr. Alampur did not indicate that Plaintiff should discontinue working and noted that she provided nutrition counseling and that Plaintiff was alert and responding well to her medication for her myasthenia gravis. *Id.* at 350–52. At another visit on December 7, 2022, Plaintiff reported having visited Community Primary Care for neck pain and receiving a muscle relaxant which has significantly helped relieve the pain. She also reported some upper and lower extremity numbness. *Id.* 343–45. Dr. Alampur ordered an MRI of her spine and an electromyography (EMG) test. *Id.* The cervical MRI results were normal. *Id.* at 339. The EMG was also largely normal, except for one nerve in Plaintiff's ankle. Dr. Alampur also performed a motor conduction test and sensory conduction test, both of which were normal. *Id.* at 383.

*b. Drs. Elizabeth Schulman and Sophia Khan*

Plaintiff also suffers from rheumatoid arthritis, for which she saw Dr. Elizabeth Schulman at the Hospital for Special Surgery and Dr. Sophia Khan at Premier Medical. *Id.* at 673–76, 679–735. On April 13, 2023, Dr. Khan found that Plaintiff's physical test and motor strength test

were normal and diagnosed her with seronegative inflammatory polyarthropathy.[4] *Id.* at 675. However, Dr. Khan noted that there was a discrepancy between Plaintiff's reported symptoms and findings on her physical exam. *Id.*

*c. Dr. Mark A. Harrison*

Plaintiff also was examined by her cardiologist, Dr. Mark A. Harrison at Nuvance Health. *Id.* at 245–50. Although Plaintiff complained of general breathlessness after activity, Dr. Harrison noted that this was generally resolved within a few minutes of resting and that Plaintiff's physical exam was otherwise normal. *Id.*

*d. Dr. Jai Jalaj*

Plaintiff also suffers from episodes of bronchial asthma, resulting in chest tightening, for which she saw Dr. Jai Jalaj. Generally, at each visit, Dr. Jalaj noted that Plaintiff was alert and responded to regular treatment. *Id.* at 258–71, 437, 523–26. From August 24, 2021, to February 26, 2024, Plaintiff visited Dr. Jalaj, citing recent episodes of bronchial asthma with chest tightening. *Id.* However, Plaintiff also reported she responded well to the treatment plan with her inhaler. *Id*. April 18, 2023 and July 28, 2023 chest x-rays showed changes to Plaintiff's lungs consistent with mild COPD. *Id*. at 518-19. The 2023 x-ray results were consistent with previous x-rays, ECGs, and EKGs, meaning that her condition was at that time stable.[5]

---

[4] This is the medical term for having arthritis in five or more joints. *Polyarthritis*, CLEV. CLINIC, https://my.clevelandclinic.org/health/diseases/24433-polyarthritis (last visited July 8, 2026).

[5] In May 2021, Plaintiff had a chest x-ray that resulted in findings consistent with COPD with otherwise unremarkable findings. *Id.* at 251. June 2021, Plaintiff saw her doctor due to shortness of breath and breathlessness, resulting in an ECG, which revealed a "mild abnormality." *Id.* at 248. Following this test, in July 2021, Plaintiff had an EKG, which revealed normal heart rhythms with no significant signs of valve disease and also noted that Plaintiff had no shortness of breath or palpitations. *Id.* at 245.

*e. Community Primary Care*

Plaintiff saw several different providers at Community Primary Care for general chronic pain and other health issues from approximately July 1, 2022 to December 1, 2022. *Id.* at 277–89. At each of these visits, providers noted that Plaintiff was not in acute distress and was alert. *Id.* On July 21, 2022, Plaintiff reported that she was frequently absent from work due to medical issues and had recently fallen, but was on a weekly injection for her rheumatoid arthritis and would be starting Rinvoq. *Id.* at 286–88. Plaintiff was provided with information on Family and Medical Leave Act ("FMLA") leave. *Id.* On July 28, 2022, Plaintiff had another appointment to address chronic pain from rheumatoid arthritis and was given a diagnosis of chronic pain syndrome. *Id.* at 283. In October 2022, Plaintiff had an appointment to discuss her negative reaction to Rinvoq, which included vomiting and nausea.[6] *Id.* at 280. On December 1, 2022, Plaintiff complained of neck pain and pressure at the bottom of her skull, for which she was prescribed meloxicam and cydobenzaprine. *Id.* at 277–78. Following this appointment, as noted above, Plaintiff reported to Dr. Alampur that the medication had been effective in relieving her pain. *Id.* 343–45.[7]

*f. Dr. Fernando Carnavali*

Beginning in the fall of 2022, Plaintiff complained of symptoms of long Covid and sought treatment from Dr. Fernando Carnavali at Mount Sinai's Center for Post Covid-Care. She was first seen on September 20, 2022, at which time Plaintiff complained of a loss of smell and

[6] Plaintiff had previously visited an emergency room for these symptoms on October 5, 2022. *Id.*

[7] On May 1, 2022, Plaintiff also appears to have had a telehealth appointment to address complaints of dizziness, but Plaintiff denied confusion, memory loss, numbness, and tingling. *Id.* at 304. It was noted that Plaintiff appeared in no acute distress and appeared to be well nourished. *Id*. at 305.

taste, persistent brain fog, and consistent fatigue. *Id.* at 313–15. At the initial visit, the importance of keeping a diary and mitigating post-exertional fatigue was discussed. *Id.* at 315. Plaintiff reported that she took medications for anxiety and myasthenia gravis which worked well to control her symptoms.

*g. Dr. Mary Christopher, Psychiatrist, and Arlene Giagrande, LCSW*

In addition to the physical conditions described above, Plaintiff has been diagnosed with anxiety and depression. Plaintiff's medical records note that she has been on Lexapro since 2012, which appears to initially have been prescribed by her primary care providers. *Id.* at 178, 669. During the relevant period she received mental health treatment from Dr. Mary Christopher, a psychiatric care provider at Mount Sinai, and Ms. Arlene Giagrande, a therapist.[8]

Plaintiff began seeing Dr. Christopher in or around April 6, 2023, at 1090 Amsterdam Avenue Psychiatry, shortly after she applied for disability benefits. She reported anxiety and panic attacks. Dr. Christopher diagnosed her with generalized anxiety disorder and depression and continued Plaintiff's prescriptions for Lexapro and Xanax and started Plaintiff on Wellbutrin. *Id.* at 669. Plaintiff thereafter saw Dr. Christopher on an approximately monthly basis, from April 2023 to April 2024, [9] with no significant change to her medications.[10] *Id.* at 527–672. Each visit, Dr. Christopher noted that Plaintiff was future-oriented and goal-directed and that although she struggled with low self-esteem related to her physical symptoms and

---

[8] Although Plaintiff asserts that her anxiety and depression began in October 2022, it is of note that Plaintiff has been on Lexapro since 2012. *Id.* at 669.

[9] Plaintiff's subsequent visits occurred on the following dates: May 4, 2023; June 1, 2023; July 6, 2023; August 10, 2023; October 12, 2023; November 2, 2023; November 21, 2023; January 2, 2024; and January 25, 2024; February 29, 2024; April 18, 2024. *Id.* at 572–672.

[10] Plaintiff was also prescribed Trazadone in October 2023, related to her difficulty falling asleep. *Id.* at 604. This prescription was later changed in November 2023 to Gabapentin when it appeared that Trazadone was ineffective. *Id.* at 595–96.

panic attacks, the medications were effective. *Id.* However, on July 6, 2023, Plaintiff did raise concerns around brain fog and her worsening cognitive status, to which Dr. Christopher responded with information on a study on brain fog and further information on neuropsychological testing. *Id.* at 634. Plaintiff ultimately found participation in the study helpful. *Id.* at 592.

Plaintiff began seeing Ms. Giagrande in March 2023. On July 17, 2023, shortly after her initial claim for benefits was denied, Ms. Giagrande, a LCSW, diagnosed Plaintiff with severe anxiety and depression. *Id.* at 474–75. On July 17, 2023, Ms. Giagrande wrote a letter to the Division of Disability Determinations, stating that the symptoms of these diagnoses were such that Plaintiff has difficulty handling stress, engaging with coworkers and clients, poor time management and follow through, difficulty focusing and shifting focus, and a hard time completing tasks in a timely manner.[11] *Id.* Ms. Giagrande concluded that Plaintiff is "unable to perform duties of any reasonable occupation, including that which she was formerly engaged." *Id.*

B. <u>Consultative Examinations and State Agency Medical Consultants</u>

*a. Internal Medicine Consultative Examiner Dr. Kautilya Puri and Psychiatric Consultative Examiner Dr. Alison Murphy*

In connection with her application for benefits, Plaintiff was examined by two doctors. Dr. Kautilya Puri examined Plaintiff on March 22, 2023. Dr. Puri found that Plaintiff only had mild limitations in her physical functioning, with no acute distress, a normal gait, an ability to stand on her heels and toes and squat moderately less than halfway decreased, a normal stance, and

[11] Ms. Giagrande authored another letter, reiterating the diagnoses and her opinion that Plaintiff is unable to engage in any reasonable occupation. *Id.* at 677. This letter is undated. *Id.*

no need for assistance navigating chairs or the exam table. *Id.* at 423. Dr. Puri also found Plaintiff's cognitive function to be clear. Dr. Puri found normal musculoskeletal movement and fine motor activity. *Id.* at 424. Nevertheless, Dr. Puri did recommend that Plaintiff "not work from heights, with heavy machinery, be allowed to drive, or be in an environment, which could increase her respiratory complaints." *Id.* at 425. Dr. Puri also ordered an x-ray of Plaintiff's left knee, which was normal.[12]

On April 4, 2023, Plaintiff was also evaluated by Dr. Alison Murphy. When recording Plaintiff's self-reported medical history, she noted Plaintiff was hospitalized for depression and suicidal ideation in the 1980s and was receiving weekly therapy from Arlene Giagrande. *Id.* at 429–433. Dr. Murphy also noted Plaintiff's diagnoses of rheumatoid arthritis, myasthenia gravis, long Covid, asthma, and a prior head injury. *Id.* Dr. Murphy found that Plaintiff had satisfactory hygiene and grooming, normal posture and motor behavior, and coherent goal–oriented thought processes. *Id.* Further, Dr. Murphy found that there was no evidence of limitation in Plaintiff's ability to make work-related decisions and maintain social relationships and that there were only mild limitations related to interacting with supervisors and sustaining concentration. *Id.* Ultimately, Dr. Murphy found that the evaluation was consistent with a psychiatric diagnosis of unspecified anxiety disorder, but that the diagnosis was not "significant enough to interfere with the claimant's ability to function on a daily basis." *Id.*

[12] Plaintiff's x-ray of her left knee also showed no fracture, dislocation or lesions. *Id*. at 426.

*b. State Agency Medical Consultants Drs. D. Miller and M. Mantello and Psychology Consultants P. Roy-Petrick and S. Juriga*

In connection with her initial application for benefits and request for reconsideration, four medical consultants, Drs. D. Miller and M. Mantello and Psychology Consultants P. Roy-Petrick and S. Juriga, also reviewed Plaintiff's medical records. P. Roy-Petrick reviewed Plaintiff's medical records[13] in April 2023 at the initial application stage, finding that the Plaintiff demonstrated only mild limitations related to her fatigue, brain fog, anxiety disorder, and depressive disorder. D. Miller also reviewed Plaintiff's medical records[14] at the initial stage, finding that Plaintiff was only limited insofar as work related to heights, heavy machinery, driving, or respiratory hazards. Ultimately, Dr. Miller found that Plaintiff could engage in a light range of work. *Id.* at 73–90. At the reconsideration level,[15] S. Juriga reviewed Plaintiff's records and application, including Ms. Giagrande's letter and further notes from Dr. Christopher, and concurred with P. Roy-Petrick's findings. *Id.* at 85. Dr. Mantello also evaluated Plaintiff's records at the reconsideration stage and concurred with Dr. Miller's previous findings. *Id.* at 88–90.

## III. The Commissioner's Decision

ALJ Stacchini found that Plaintiff was not disabled within the meaning of the Social Security Act. Although he found that Plaintiff had severe physical impairments—inflammatory polyarthropathy, myasthenia gravis, long Covid, asthma, chronic obstructive pulmonary disease, cervical degenerative disc disease, lumbar degenerative disc disease, right ankle

[13] The records reviewed included Plaintiff's records from Dr. Christopher, as well as evidence from Ms. Giagrande and Plaintiff's application. *Id.* at 75

[14] The records reviewed included Plaintiff's records from Dr. Puri, Dr. Carnavali, Dr. Jalaj, and Dr. Alampur.

[15] Reconsideration is the first level of appeal following a decision on a claimant's initial application.

osteoarthritis, and obesity—he concluded that Plaintiff was not disabled. *Id.* at 34. ALJ Stacchini applied the five-step sequential evaluation process outlined in the Social Security Regulations to determine whether an individual is disabled. *Id.* at 21–34.

First, ALJ Stacchini found that Plaintiff met the insured requirements of the Social Security Act and that Plaintiff had not engaged in substantial gainful activity ("SGA") since October 24, 2022. *Id.* at 21–22. Next, ALJ Stacchini found Plaintiff to be severely impaired as it relates to her inflammatory polyarthropathy, myasthenia gravis, long Covid, asthma, chronic obstructive pulmonary disease, cervical degenerative disc disease, lumbar degenerative disc disease, right ankle osteoarthritis, and obesity, but did not find Plaintiff severely impaired as it relates to her medically determinable mental impairments. *Id.* at 22–25. In reaching his conclusion that Plaintiff's mental impairments were mild, ALJ Stacchini applied the broad four area functional assessment outlined in the Social Security Regulations and relied on medical records and reports from Dr. Christopher, Ms. Giagrande, Dr. Murphy, P. Roy-Petrick, S. Juriga, and Plaintiff's testimony at the hearing. *Id.* With regard to her physical impairments, at step three, ALJ Stacchini found that none of Plaintiff's impairments met or equaled the severity of the listed impairments in the Social Security Regulations. *Id.* at 25. He considered various listings, including disorders of the skeletal spine resulting in compromise of a nerve root(s), lumbar spinal stenosis, abnormality of major joint(s) in any extremity, asthma, chronic respiratory disorders, inflammatory arthritis, and obesity and concluded that the medical records and testimony did not evidence support for these listings. *Id.* at 25–27.

At step four, ALJ Stacchini found that the Plaintiff has a residual functional capacity ("RFC") to conduct and perform light work with the following limitations: occasional climbing of ramps

and stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent overhead reaching; and avoidance of continuous exposure to atmospheric conditions, unprotected heights, hazardous machinery; and avoidance of operating a motor vehicle. *Id.* at 27. In reaching this conclusion, ALJ Stacchini applied the two-step process to determine whether there are (1) impairments that are evidenced by medically accepted techniques and diagnoses that could be reasonably expected to produce the relevant pain and symptoms and (2) a persistence, limiting effects, and intensity to the symptoms, such that Plaintiff's ability to complete work-related activities is limited. *Id.* at 28. Although ALJ Stacchini found that the record demonstrated severe medical impairments, he found that the symptoms did not align with the extreme limitations alleged.[16] *Id.* ALJ Stacchini agreed with Dr. Puri's findings that Plaintiff had normal neurological and orthopedic examinations and agreed with the findings from the state agency medical consultants, who confirmed Plaintiff's ability to complete light work. *Id.* at 30. Further, ALJ Stacchini, emphasized that Plaintiff testified she is independent in most daily activities and can complete light, daily tasks (cleaning, cooking, and laundry). *Id.* at 31. Given these findings ALJ Stacchini found that Plaintiff's impairments could have plausibly caused the alleged symptoms, but that the limiting effects of these symptoms are not as severe as alleged, ultimately finding that Plaintiff has an RFC for light work with some limitations. *Id.* at 31–32. The ALJ did not consider Plaintiff's mild mental limitations in his determination of the RFC. *Id.*

[16] ALJ Stacchini specifically highlighted that even though Plaintiff had a history of bronchial asthma and Covid, pulmonary testing demonstrated normal findings, only a week-long bout of bronchitis, COPD, and included notes indicating that she was "breathing well" and tolerating her medications. *Id.* at 29. Further ALJ Stacchini noted that although there was a history of a right ankle injury, neck pain and extremity numbness, nerve testing was normal, and the myasthenia gravis was stable. *Id.*

Further, relying upon the testimony of the VE, ALJ Stacchini found that Plaintiff could perform her previous work as a teacher's aide. *Id.* at 32. ALJ Stacchini also found that considering Plaintiff's age, education, work experience, and RFC, there are alternative vocations for Plaintiff. *Id.* ALJ Stacchini relied on the VE's finding that Plaintiff could perform the following additional vocations classified as "light work": cashier, mail clerk, and office helper. *Id.* at 33. Based on these findings, ALJ Stacchini concluded that Plaintiff has not been under a disability from October 24, 2022, to the date of the decision (June 7, 2024). *Id.* at 33–34.

## LEGAL STANDARD

### I. Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner must, as a threshold matter, determine whether the ALJ provided the plaintiff with a full and fair hearing under the Secretary's regulations and fully and completely developed the administrative record. *See Intonato v. Colvin*, No. 13 Civ. 3426, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (internal citation omitted). The duty to develop the record requires the ALJ "to ensure that the record contains sufficient evidence to make a determination." *Bussi v. Barnhart*, No. 1 Civ. 4330, 2003 WL 21283448, at *8 (S.D.N.Y. June 3, 2003). The ALJ must obtain additional information "when the evidence as a whole is not complete enough for the ALJ to make a determination." *Id.* (citation omitted). An ALJ's failure to adequately develop the record is an independent ground for vacating the ALJ's decision and remanding the case. *Moran v. Astrue*, 569 F.3d 108, 114–15 (2d Cir. 2009).

Once the court is satisfied that the plaintiff was afforded a full hearing and the record is fully developed, the court then assesses the Commissioner's conclusions. In doing so, the court

is limited to determining whether the Commissioner's conclusions were (1) "supported by substantial evidence in the record," and (2) "based on [application of the] correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

Substantial evidence is "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. § 423(d)(5)(B). The ALJ's decision must set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." *Id*. § 405(b)(1). It must do so "with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Herrera v. Comm'r of Soc. Sec.*, No. 20 Civ. 7910, 2021 WL 4909955, at *5 (S.D.N.Y. Oct. 21, 2021) (citing *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)).

That said, the ALJ need not "mention[] every item of testimony presented" or "reconcile explicitly every conflicting shred of medical testimony." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). If the ALJ fails to consider evidence in the record, the court must be "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Mongeur*, 722 F.2d at 1040 (citation omitted). If the Commissioner's findings are

supported by substantial evidence, those findings are conclusive. 42 U.S.C. § 405(g); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

## II. Standard Governing Evaluations of Disability Claims by the Commissioner

Under the Act, a claimant is disabled if he lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled within the meaning of the Act only if it is determined that the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine eligibility for disability benefits, the Commissioner is required to conduct a sequential five-step inquiry whereby the Commissioner determines: (1) whether the claimant is currently engaged in any substantial gainful activity ("SGA"); (2) if not, whether the claimant has a "severe" impairment or combination of impairments that limits their ability to do basic work activities; [17] (3) if so, whether the impairment is listed in Appendix 1 of the regulations, and what the claimant's RFC is [18]; (4) if the impairment does not qualify as a listed impairment,

[17] An impairment, or a combination of impairments, is considered "severe" under the regulations when it substantially restricts an individual's capacity to carry out basic work-related activities. Conversely, an impairment or combination of impairments is deemed "not severe" when the medical and other relevant evidence demonstrates that it involves no more than a minor abnormality—or a set of minor abnormalities—that would have only a minimal impact on the individual's ability to perform work functions. *See* 20 C.F.R. § 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p. The Agency's Listing of Impairments "describes for each of the major body systems[,] impairments . . . consider[ed] . . . severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 404.1525(a).

[18] A plaintiff's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from physical or mental impairments. In making this finding, the Commissioner must consider all of the plaintiff's impairments, including impairments that are not severe. *See* 20 C.F.R. § 404.1520(e); 404.1545.

whether the claimant possesses the RFC to perform their past relevant work; and (5) if the claimant is not capable of performing past work, whether they are capable of performing other work that exists in the national economy when considering their age, education, and work experience. *See Vellone v. Saul*, No. 20 Civ. 261, 2021 WL 319354, at *5 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, No. 20 Civ. 261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). The claimant bears the burden of proof at the first four steps of the analysis, and at the last step, the Commissioner has the burden of showing there is other work the claimant could perform. *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998). However, "a claimant need not be an invalid to be found disabled under the Social Security Act." *Nunez v. Comm'r of Soc. Sec*., 160 F. 4th 60, 77 (2d Cir. 2025) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks omitted)). To qualify for benefits under the Act, a plaintiff must present evidence demonstrating an inability "to engage in any SGA by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a *continuous* period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

When considering evidence in the form of medical opinions, the Commissioner must consider: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The supportability and consistency factors are the "most important," and ALJs must explain how they considered those factors for medical opinions. *Id*. §§ 416.920a, 416.920c(b)(2). The supportability inquiry focuses on how well a medical source supported and explained their opinion. *Vellone,* 2021 WL 319354, at *6. The question of consistency concerns whether the

opinion is consistent with other evidence in the medical record. *Id.* The Commissioner is tasked with analyzing medical opinions at the source-level, meaning the Commissioner need not discuss each medical opinion in the record, and may apply the five factors holistically to a single medical source. *Id.* §§ 404.1520c(b)(1); 416.920c(b)(1). Regarding claims filed on or after March 27, 2017, in evaluating the medical evidence, the Commissioner need not assign particular evidentiary weight to examining or treating physicians as was previously required by the Act. *Vellone*, 2021 WL 319354, at *6. However, the regulations continue to recognize the "foundational nature" of the observations of treating sources. *Steven M.W. v. Comm'r of Soc. Sec.*, No. 21 Civ. 390, 2022 WL 2669491, at *6 (S.D.N.Y. June 17, 2022), *report and recommendation adopted sub nom.*, *Washburn v. Comm'r of Soc. Sec.*, No. 21 Civ. 390, 2022 WL 2669296 (S.D.N.Y. July 11, 2022).

## DISCUSSION

As a threshold matter, the Court finds, and the parties do not dispute, that ALJ Stacchini provided Plaintiff with a full and fair hearing under the Secretary's regulations and properly developed the administrative record.[19] However, Plaintiff raises several issues in her motion including the following: that the ALJ did not properly explain his reliance on Dr. Murphy's opinion, failed to incorporate Plaintiff's mental limitations into the RFC and consider the mental limitations, even if non-severe, together with physical limitations when determining the RFC; improperly discounted Plaintiff's own statements about her limitations when determining the

[19] At the hearing, Plaintiff mentioned a single visit with a neurologist that was not in the administrative record. (Admin. Record at 60). However, ALJ Stacchini found that good cause to include the visit was not present because it was only a visit for a refill for gabapentin. *Id.* at 60–61. Plaintiff did not dispute this finding at the hearing or in her briefing. *Id.*

RFC; failed to explain and/or improperly adopted findings that Plaintiff's physical conditions were "stable" or "subtle" when determining the RFC; and improperly found that Plaintiff is capable of SGA at step five. However, the Court only turns to the matter of whether the ALJ's failure to incorporate Plaintiff's mental limitations was legal error, because this issue is dispositive.

Plaintiff argues that ALJ Stacchini's conclusion regarding Plaintiff's RFC—that Plaintiff can perform light work with some limitations[20]—is not supported by substantial evidence, asserting that he did not properly consider Plaintiff's mental impairments and failed to consider Plaintiff's total limitations with the physical limitations when determining Plaintiff's RFC. Plaintiff's arguments are persuasive. Generally, the ALJ must consider all of the impairments, including nonsevere impairments, when determining a plaintiff's RFC. *See* 20 C.F.R. § 404.1520(e); 404.1545. Courts have found such an omission to be error when an ALJ fails to include limitations for mental impairments, regardless of severity, or fails to include a reason for their omission. *Id.*; *Parker-Grose v. Astrue*, 462 Fed. Appx. 16, 18 (2d Cir. 2012) (finding that an ALJ's failure to incorporate nonsevere mental limitations in the RFC determination was legal error); *Coulter v. Comm'r of Soc. Sec.*, 673 F. Supp. 3d 365, 375–78 (S.D.N.Y. May 10, 2023) (finding that the calculation of the severity of the mental impairment is distinct from the incorporation of these findings in the RFC and noting that any finding that the mild limitations are inconsequential must be stated when determining a plaintiff's RFC); *Amparo v. Comm'r of*

[20] These limitations, as noted above, include: occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent overhead reaching; and avoidance of continuous exposure to atmospheric conditions, unprotected heights, hazardous machinery; and avoidance of operating a motor vehicle. (Admin. Record at 27).

*Soc. Sec.*, No. 20 Civ. 10285, 2022 WL 3084482, at *10 (S.D.N.Y. July 19, 2022) (finding that an ALJ's omission of "any discussion of the impact of [the plaintiff's] mental impairment" was error); *see also Sandra J. v. Comm'r of Soc. Sec.*, No. 21 Civ. 272, 2023 WL 3734289, at *5 (W.D.N.Y. May 31, 2023) ("The ALJ's analysis of the Paragraph B criteria at step two is no substitute for his express consideration of limitations arising from Plaintiff's mental impairments in connection with the RFC determination.") (collecting cases). Cursory descriptions of a plaintiff's daily living habits have been found to be insufficient consideration of a plaintiff's mental limitations in the determination of the RFC. *Garcia v. Comm'r of Soc. Sec.*, No. 21 Civ. 1230, 2022 WL 4234555, at *14 (S.D.N.Y. Sept. 14, 2022) (finding that an ALJ did not properly consider nonsevere mental limitations by simply discussing a plaintiff's "activities of daily living and course of treatment"); *Rousey v. Comm'r of Soc. Sec.*, 285 F, Supp. 3d 723, 740–41 (S.D.N.Y. 2018) (two singular references to a plaintiff's psychological condition were insufficient to be proper consideration of her nonsevere mental impairments in the determination of the RFC).

Here, the ALJ committed a legal error by failing to incorporate Plaintiff's mild mental limitations in his RFC analysis. In determining that Plaintiff's mental impairments were not severe, the ALJ considered Ms. Giagrande's opinion, Dr. Murphy's examination of Plaintiff, the State Agency psychology medical consultants' review of Plaintiff's records, and the medical record as a whole. *Id.* at 22–25. The ALJ further considered the four broad functioning areas[21] of mental functioning for evaluating mental impairments. *Id.*; 20 C.F.R. Part 404, Subpart P, Appendix 1. Relying on the administrative record, the ALJ reached the conclusion that Plaintiff's

[21] The four functioning areas include: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting or maintaining pace"; and (4) "adapting or managing oneself." *Id.* at 24–25; 20 C.F.R. Part 404, Subpart P, Appendix 1.

mental impairment in each of the four functional areas was mild. (Admin. Record, at 24–25). Although the ALJ noted at the end of the functional analysis that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersign has found in the 'paragraph B' mental function analysis," he failed to incorporate any further substantive analysis of Plaintiff's mental impairments into the RFC determination. (Admin Record. at 26). At step four, the ALJ included statements regarding Plaintiff's diagnoses and daily living habits, including that Plaintiff "sees a therapist for anxiety and depression and takes medications . . . [and] feels her psychological symptoms are mostly controlled with medications" and that "[s]he has no difficulties getting along with others and will occasionally go to church." *Id.* at 28.[22] However, these cursory descriptions of Plaintiff's diagnoses and daily activities fall short of consideration of Plaintiff's nonsevere mental limitations. *Garcia*, 2022 WL 4234555, at *14; *Rousey*, 285 F, Supp. 3d at 740–41. This is because the ALJ did not discuss how Plaintiff's mild mental impairments limit her ability to work, or if he found that they did not limit her ability to perform light work, he did not explain why. The only limitations the ALJ placed on Plaintiff's RFC were physical limitations. The ALJ's cursory discussion of Plaintiff's mental diagnoses was insufficient to satisfy the requirement that he either incorporate non-severe impairments into the RFC or explain why he didn't.

In sum, the ALJ's omissions constitute a legal error requiring remand. *Parker-Grose*, 462 Fed. Appx. at 18*; see also Coulter*, 673 F. Supp. 3d. at 379 (finding legal error where an ALJ's RFC

[22] The only other statements included in the ALJ's RFC analysis, related to Plaintiff's mental impairments, were that Plaintiff complained of anxiety and depression, that Plaintiff is "independent with personal care and has a good relationship with family and friends and does not have difficulty getting along with others," and that Plaintiff's prior employment as a teacher's aide was "stressful." *Id.* at 22–25.

determination included only a general statement that the analysis reflected plaintiff's nonsevere mental limitation, but lacked any further analysis)); *Dejesus v. Comm'r of Soc. Sec.*, No. 24 Civ. 9435, 2026 WL 1219375, at *8 (S.D.N.Y. May 4, 2026) ("[W]here the non-severe mental impairments are found to cause even mild functional limitations, a district court should remand because it cannot determine whether the ALJ's RFC determination is supported by substantial evidence without discussion of these mild limitations."); *Ferreras-Matos v. Comm'r of Soc. Sec.*, No. 20 Civ. 7106, 2021 WL 7287630, at *15 (S.D.N.Y. Nov. 15, 2021) (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 740–41 (S.D.N.Y. 2018)).

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for remand is GRANTED, and the action is hereby remanded to the Commissioner for reconsideration at step four.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 13.**

**SO ORDERED.**

DATED: New York, New York
July 13, 2026

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge